**EXHIBIT H**

```
                                                                   Page 1
 1                   UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION
 3   EMILY C. KROLL,
 4            Plaintiff,
 5   -vs-                              File No. 1:09-CV-626
 6   WHITE LAKE AMBULANCE AUTHORITY,   HON. GORDON J. QUIST
 7            Defendant.
     _____/
 8
             VIDEOTAPED DEPOSITION OF MARK A. TERPSTRA
 9
         Taken by the Plaintiff on the 13th day of May 2010, at
10       the offices of Plunkett Cooney, 120 W. Apple Avenue,
         Muskegon, Michigan, at 9:15 a.m.
11
     APPEARANCES:
12
     For the Plaintiff:   Mr. Bradley K. Glazier (P-35523)
13                        Bos & Glazier, PLC
                          990 Monroe Avenue, NW
14                        Grand Rapids, Michigan 49503
                          (616) 458-6814
15                        bglazier@bosglazier.com
16   For the Defendant:   Mr. Robert A. Callahan (P-47600)
                          Plunkett Cooney
17                        950 Trade Centre Way, Suite 310
                          Kalamazoo, Michgan 49002
18                        (269) 3882-5935
                          rcallahan@plunkettcooney.com
19
                          Mr. Douglas M. Hughes (P-30958)
20                        William, Hughes & Cook, PLC
                          120 W. Apple Avenue
21                        Muskegon, Michigan 49443
                          (231) 727-2119
22                        doughughes@whcspc.com
23   Also Present:   Emily Kroll, Jean Dresen, Elizabeth Rutherford
24   REPORTED BY:    Carrie S. Clark-Berry (CSR-4402)
                     Certified Shorthand Reporter
25                   Registered Professional Reporter
```

Great Lakes Shorthand, P.O. Box 2002, Grand Rapids, Michigan  49501
(800) 234-2044   (888) FAX-6776   gls@greatlakesshorthand.com   www.greatlakesshorthand.com
Electronically signed by Carrie Clark-Berry (301-213-958-4547)              36ed756e-977d-49f6-95a6-fb9b4ee5adce

Mark A. Terpstra  
Emily C. Kroll vs.  
May 13, 2010  
White Lake Ambulance Authority

Page 23

```
 1       her voice.  How do you know whether she felt the need or
 2       why it was that she raised her voice?
 3   A   She apparently felt the need, because I was standing 20
 4       feet away and she was yelling.
 5   Q   At what date did this event occur?
 6   A   That I don't recall.
 7   Q   What month?
 8   A   I don't recall.
 9   Q   What year?
10   A   I don't recall.
11              (Mr. Hughes is now present in the deposition.)
12   Q   Did you complain to Brian Binns after this incident?
13   A   I don't recall.
14   Q   You state "On other days Ms. Kroll would respond for calls
15       arguing with people on the phone."  What does that mean
16       when you say "respond for calls"?  What is a response for a
17       call as you refer to in this statement?
18   A   When -- our EMT employees are on-call.  She responded from
19       home.
20   Q   So how does that work?  Someone has a spouse that's having
21       a heart attack or they think they're having a heart attack,
22       they call 911, and somehow it's routed to the EMT basic
23       that's on-call?
24   A   Yeah.  We all carry these (indicating).
25   Q   And what you're showing me is some sort of walkie talkie
```

Great Lakes Shorthand, P.O. Box 2002, Grand Rapids, Michigan  49501  
(800) 234-2044   (888) FAX-6776   gls@greatlakesshorthand.com   www.greatlakesshorthand.com  
Electronically signed by Carrie Clark-Berry (301-213-958-4547)   36ed756e-977d-49f6-95a6-fb9b4ee5adce

Mark A. Terpstra
Emily C. Kroll vs.

May 13, 2010
White Lake Ambulance Authority

Page 24

```
 1            device?
 2    A       It's a pager.
 3    Q       So a call would come through on a telephone or on the
 4            pager?
 5    A       On the pager.
 6    Q       And then you can speak into the pager like a walkie talkie?
 7    A       No.
 8    Q       What does the EMT basic or paramedic do when they get
 9            paged?
10    A       Respond to the station.
11    Q       So if it's an EMT basic who is at home, that person would
12            call the station; is that right?
13    A       Respond to the station.  Physically come to the station,
14            get in the ambulance, go on the call.
15    Q       Okay.  So a respond -- response to a call doesn't mean
16            talking to the person who needs the services?
17    A       No.
18    Q       It means just physically traveling to the Ambulance
19            Authority, getting the rig ready, and going out to provide
20            services to whoever needs it?
21    A       Yes.
22    Q       You say that she would be arguing with people on the phone.
23            What people?
24    A       Whoever she was talking to.
25    Q       Are you talking about people that were in need of medical
```

Great Lakes Shorthand, P.O. Box 2002, Grand Rapids, Michigan 49501
(800) 234-2044   (888) FAX-6776   gls@greatlakesshorthand.com   www.greatlakesshorthand.com
Electronically signed by Carrie Clark-Berry (301-213-958-4547)
36ed756e-977d-49f6-95a6-fb9b4ee5adce

Mark A. Terpstra  
Emily C. Kroll vs.  

May 13, 2010  
White Lake Ambulance Authority  

Page 25

```
 1         services?
 2   A    No.
 3   Q    Who would she be talking to on the phone?
 4   A    Josh.
 5   Q    Anyone else that you recall overhearing Emily Kroll argue
 6         with?
 7   A    No.
 8   Q    Well, your statement says "On other days Ms. Kroll would
 9         respond for calls arguing with people on the phone."
10         Should that be amended to say --
11   A    Person.
12   Q    -- person?
13   A    Yes.
14   Q    And on how many occasions did you overhear Ms. Kroll
15         arguing with Josh Easton on the phone?
16   A    More than once.
17   Q    And tell me what it is that you heard her and Josh Easton
18         arguing about.
19   A    I don't recall that.
20   Q    Usually an argument requires two people to participate.
21         Was Josh Easton saying things back to Emily Kroll?
22   A    That I don't know.
23   Q    And you don't recall what they were arguing about?
24   A    No.
25   Q    Did you ever make any complaint to Brian Binns after one of
```

Great Lakes Shorthand, P.O. Box 2002, Grand Rapids, Michigan  49501  
(800) 234-2044   (888) FAX-6776   gls@greatlakesshorthand.com   www.greatlakesshorthand.com  
Electronically signed by Carrie Clark-Berry (301-213-958-4547)  
36ed756e-977d-49f6-95a6-fb9b4ee5adce

Mark A. Terpstra
Emily C. Kroll vs.
May 13, 2010
White Lake Ambulance Authority

Page 26

```
 1        these incidents where you overheard Emily Kroll arguing
 2        with Josh Easton on the phone?
 3   A    I don't recall.
 4   Q    So if you did, you don't remember?
 5   A    Right.
 6   Q    How is it that you would have been in a position to
 7        overhear the conversation between Emily Kroll and Josh
 8        Easton?
 9   A    While responding to the scene she's sitting in the cab of
10        the truck next to you.
11   Q    So this would be typically on the route from the ambulance
12        garage to the scene of the incident?
13   A    Some days from the scene of the incident to the hospital.
14   Q    And you don't recall what they were arguing about; is that
15        right?
16   A    No.  Correct.
17   Q    You can't recall how many times this occurred?
18   A    No.
19   Q    And you can't recall whether or not you ever told Brian
20        Binns about it?
21   A    Whether or not I told him about it?
22   Q    Yes.
23   A    Yes, I told him about it.
24   Q    When?
25   A    That I don't know.
```

Mark A. Terpstra  May 13, 2010
Emily C. Kroll vs.  White Lake Ambulance Authority

Page 27

```
 1   Q    Well, you told me that you didn't recall talking to him
 2        about it after any particular incident, correct?
 3   A    I believe you asked me did I make a formal complaint.
 4   Q    No.  I don't think I used the word "formal," but the record
 5        will reflect whether I did or not.
 6   A    Okay.
 7   Q    My question is did you ever make a complaint to Mr. Binns
 8        about an argument that took place between Josh Easton and
 9        Emily Kroll after hearing that argument or discussion?
10   A    Yes.
11   Q    When did you make that complaint?
12   A    That I don't recall.
13   Q    What did you tell Brian Binns?
14   A    That she was on her cell phone on the way to the hospital.
15   Q    So you recall an incident where Emily Kroll was talking to
16        Josh Easton on her cell phone en route from an incident to
17        the hospital?
18   A    Yes.
19   Q    And when did that occur?
20   A    A date?
21   Q    Yes.
22   A    I don't recall.
23   Q    What was the nature of the call?
24   A    Of the 911 call?
25   Q    Yes.
```

Great Lakes Shorthand, P.O. Box 2002, Grand Rapids, Michigan 49501
(800) 234-2044   (888) FAX-6776   gls@greatlakesshorthand.com   www.greatlakesshorthand.com
Electronically signed by Carrie Clark-Berry (301-213-958-4547)   36ed756e-977d-49f6-95a6-fb9b4ee5adce

Case 1:09-cv-00626-GJQ   ECF No. 50-9, PageID.323   Filed 06/09/10   Page 8 of 11

Mark A. Terpstra  
Emily C. Kroll vs.  
May 13, 2010  
White Lake Ambulance Authority

Page 30

```
 1         the hospital en route to the hospital in order to deliver
 2         information about a patient or to receive information from
 3         a doctor or a nurse about the patient?
 4    A    The person driving or the person in the back?
 5    Q    The person driving.
 6    A    It's possible.
 7    Q    Your statement indicates that you recall on other days Ms.
 8         Kroll crying throughout 911 calls.  If someone makes a 911
 9         call, who picks up the phone on the other end?
10    A    Central dispatch.
11    Q    Are you talking about a call that would be between the
12         person requesting ambulance service and Ms. Kroll or --
13    A    No.
14    Q    Okay.  Who was Ms. Kroll talking to during the 911 call
15         where you recall her crying?
16    A    Josh.
17              (Mr. Hughes is no longer present in the
18              deposition.)
19    Q    And why would that be a 911 call if Emily Kroll was talking
20         with Josh Easton?
21              MR. CALLAHAN:  Objection to the form and
22         foundation of the question.
23    Q    Do you understand the question?
24    A    I think so.
25    Q    Go ahead.
```

Great Lakes Shorthand, P.O. Box 2002, Grand Rapids, Michigan 49501  
(800) 234-2044   (888) FAX-6776   gls@greatlakesshorthand.com   www.greatlakesshorthand.com  
Electronically signed by Carrie Clark-Berry (301-213-958-4547)  
36ed756e-977d-49f6-95a6-fb9b4ee5adce

Mark A. Terpstra
Emily C. Kroll vs.
May 13, 2010
White Lake Ambulance Authority

Page 32

| | | |
|---|---|---|
| 1 | Q | And when did you complain to Brian Binns about that? |
| 2 | A | That I don't recall. |
| 3 | Q | What did you tell Brian Binns? |
| 4 | A | That she was crying on the phone, arguing on the phone while driving a rig. |
| 6 | Q | Well, you've already talked about arguing on the phone. Did this episode where she was crying occur on the same event that she was arguing? |
| 9 | A | Yes. |
| 10 | Q | So it's on the same call? |
| 11 | A | Yeah. |
| 12 | Q | How many times do you recall her crying during an ambulance call? |
| 14 | A | More than once. |
| 15 | Q | Can you be any more specific? |
| 16 | A | No. |
| 17 | Q | Was she sniffling or -- describe what you write down here as crying. |
| 19 | A | Crying. Tears running down her face. Upset. Physically upset. |
| 21 | Q | When did that occur in relationship to Ms. Kroll's last day of employment? |
| 23 | A | That I don't recall. |
| 24 | Q | Did you do anything to attempt to console Ms. Kroll when she was crying on this occasion or occasions when she was |

Great Lakes Shorthand, P.O. Box 2002, Grand Rapids, Michigan 49501
(800) 234-2044   (888) FAX-6776   gls@greatlakesshorthand.com   www.greatlakesshorthand.com
Electronically signed by Carrie Clark-Berry (301-213-958-4547)
36ed756e-977d-49f6-95a6-fb9b4ee5adce

Mark A. Terpstra
Emily C. Kroll vs.
May 13, 2010
White Lake Ambulance Authority

Page 40

| | | |
|---|---|---|
| 1 | A | I don't recall. |
| 2 | Q | Okay. At any time did you report your concerns with Emily Kroll's behavior to Jean Dresen? |
| 4 | A | I don't recall. |
| 5 | Q | Okay. There's been some questions about the use of a cell phone while driving by Ms. Kroll. Was that her own cell phone that she was using? |
| 8 | A | Yes. |
| 9 | Q | Okay. And was she using her cell phone to text as well? |
| 10 | A | It appeared so. |
| 11 | Q | Okay. Well, did you observe her texting while driving? |
| 12 | A | Yes. |
| 13 | Q | And could you be in a position in the back of the ambulance to see her texting while driving? |
| 15 | A | Yes. |
| 16 | Q | And was the ambulance being driven at a high speed while she was texting? |
| 18 | A | The speed limit down the highway. |
| 19 | Q | Do you consider that to be a safe and prudent practice? |
| 20 | A | No. |
| 21 | Q | On ambulance runs would Emily Kroll on occasion be on the cell phone arguing with someone? |
| 23 | A | Yes. |
| 24 | Q | And do you know for a fact that that was with Josh Easton? |
| 25 | A | Yes. |

Great Lakes Shorthand, P.O. Box 2002, Grand Rapids, Michigan 49501
(800) 234-2044  (888) FAX-6776  gls@greatlakesshorthand.com  www.greatlakesshorthand.com
Electronically signed by Carrie Clark-Berry (301-213-958-4547)
36ed756e-977d-49f6-95a6-fb9b4ee5adce

Case 1:09-cv-00626-GJQ   ECF No. 50-9, PageID.326   Filed 06/09/10   Page 11 of 11

Mark A. Terpstra  
Emily C. Kroll vs.  
May 13, 2010  
White Lake Ambulance Authority

Page 41

```
 1   Q    And how do you know for a fact that that was with Josh
 2        Easton?
 3   A    Because I asked her who she was arguing with.
 4   Q    Okay.  And at the same time or at the same time that she
 5        was -- strike that.
 6             On the same runs that she would have been arguing
 7        on the phone with Josh Easton, would those with be the
 8        occasions when she was also texting?
 9   A    Yes.
10   Q    Did you assume that that texting was with Josh Easton as
11        well?
12   A    Yes.
13   Q    And you testified to Ms. Kroll crying during 911 runs.  Was
14        that before or after calls that she had with Josh Easton
15        where she was arguing?
16   A    Rephrase that.
17   Q    Sure.  You testified to occasions when you saw Emily Kroll
18        crying during 911 runs.
19   A    Yeah.
20   Q    Were those on occasions when she would have been arguing
21        with Josh Easton?
22   A    I would assume so.
23   Q    Okay.  You made that assumption?
24   A    Yeah.
25   Q    Okay.  In your experience do you consider it necessary for
```

Great Lakes Shorthand, P.O. Box 2002, Grand Rapids, Michigan  49501  
(800) 234-2044   (888) FAX-6776   gls@greatlakesshorthand.com   www.greatlakesshorthand.com  
Electronically signed by Carrie Clark-Berry (301-213-958-4547)  
36ed756e-977d-49f6-95a6-fb9b4ee5adce