## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EMILY C. KROLL,

        Plaintiff,

                                       Civil Action No.: 1:09-CV-626

vs.

                                       HON. GORDON J. QUIST

WHITE LAKE AMBULANCE
AUTHORITY,

        Defendant.

---

Bradley K. Glazier (P35523)
BOS & GLAZIER, P.L.C.
Attorneys for Plaintiff
990 Monroe Avenue, N.W.
Grand Rapids, MI 49503
(616) 458-6814

Robert A. Callahan (P47600)
PLUNKETT COONEY
Attorneys for Defendant
950 Trade Centre Way, Ste. 310
Kalamazoo, MI 49002
(269) 382-5935

Douglas M. Hughes (P30958)
WILLIAM HUGHES & COOK PLC
Co-Counsel for Defendant
120 W. Apple Avenue
P.O. Box 599
Muskegon, MI 49443
(231) 727-2119

---

## PLAINTIFF'S BRIEF IN OPPOSITION
## TO DEFENDANT'S SUMMARY JUDGMENT MOTION

## ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

Page

I.    INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   COUNTER-STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

      A.    The Parties  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

      B.    The Personnel Policies at WLAA  . . . . . . . . . . . . . . . . . . . . . . . . . .  2

      C.    The Performance of Emily Kroll  . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

      D.    WLAA's Practice of Mandating Counseling for
            Its Employees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

      E.    WLAA's Ultimatum to Ms. Kroll - Supervised
            Counseling or Termination  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

      F.    The Events of April 28, 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

      G.    EEOC Charges  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

      H.    Emily Kroll's Responses to WLAA's Asserted Facts . . . . . . . . . . . . . . .  7

            1.    The Plaintiff's Medical Records and Defendant's
                  Psychological Examination Report are
                  Inadmissible and Irrelevant . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

            2.    The Co-Worker Testimony is Misrepresented
                  And Contested  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

            3.    Defendant's Unsupported Assertions . . . . . . . . . . . . . . . . . . . . .  11

III.  ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

      A.    Summary Judgment Standard  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

      B.    The ADA Prohibits an Employer From Requiring
            Medical Examinations or Making Disability Inquiries
            Unless the Examination or Inquiry is "Job Related and
            Consistent with Business Necessity" . . . . . . . . . . . . . . . . . . . . . . . . .  12

C.   Employees Need Not Be Disabled in Order to Be
     Protected by the Medical Examination and
     Inquiry Provisions of the ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

D.   A Medical Examination Includes Mandated
     Treatment By A Mental Health Professional . . . . . . . . . . . . . . . . . . . . .  13

E.   The Prohibitions Against Medical Examinations
     Are Not Subject to the McDonnell-Douglas
     Burden Shifting Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

F.   A Medical Examination or Inquiry About a Disability
     Is Only Job Related and Consistent With Business
     Necessity When the Employer Has A Reasonable
     Belief, Based on Objective Evidence, That a Medical
     Condition Will Impair an Employee's Ability to
     Perform Essential Job Functions or Cause
     the Employee to Pose a Direct Threat . . . . . . . . . . . . . . . . . . . . . . . . .  15

G.   Job Relatedness and Business Necessity are
     Fact Issues and Not Issues of Law . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

H.   Whether a Medical Condition Rendered Emily
     Kroll "Incapable of Performing Her Job" Or Caused
     Her To Be A "Direct Threat" Are Disputed Fact Issues . . . . . . . . . . . .  17

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

## TABLE OF AUTHORITIES

Page

Cases

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242; 106 S.Ct. 2505; 91 L.Ed.2d 202 (1986) . . . . . . . . . . . . . . 11, 12

*Barnes v. Cochran*,
944 F. Supp. 897 (S.D. Fla. 1996), *aff'd* 130 F.3d 443 (1997) . . . . . . . . . . . . 13

*Borgus v. Smith Kline Beechom Corp.,*
2004 WL 2095534 (W.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 20

*Cavin v. Honda of America Mfg. Inc.,*
346 F.3d 713 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Conroy v. New York State Dep't. Of Correctional Services,*
33 F.3d 88 (2nd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cripe v. City of San Jose,*
261 F.3d 877 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Doe v. Kohn Nast & Graf,*
866 F. Supp. 190 (E.D. Pa. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Fisher v. Harvey,*
2006 WL 849868 (E.D. Tenn. March 31, 2006) . . . . . . . . . . . . . . . . . . . . . . 13

*Fredenburg v. Contra Costa County Dep't. Of Health Services,*
172 F.3d 1176 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fritsch v. City of Chula Vista,*
187 F.R.D. 614 (S.D. Ca. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gonzalez v. Sandoval County,*
2 F. Supp. 2d 1442 (D.N.M. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*Lentz v. City of Cleveland,*
410 F. Supp. 2d 673 (N.D. Ohio 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574; 106 S. Ct. 1348; 89 L.Ed. 2d 538 (1986) . . . . . . . . . . . . . . . . 11

*Nunes v. Wal-Mart Stores, Inc.,*
    164 F.3d 1243 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Reeves v. Sanderson Plumbing Products, Inc.,*
    530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Roe v. Cheyenne Mountain Conf. Resort, Inc.,*
    124 F.3d 1221 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Schaffer v. A.O. Smith Harvestore Prod.,*
    74 F.3d 722 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sullivan v. River Valley School Dist.,*
    197 F.3d 804 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Tice v. Centre Area Transp. Auth.,*
    247 F.3d 506 (3rd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Transp. Workers, Local 110 v. New York City Transp. Auth.,*
    2004 WL 830289 (S.D.N.Y. April 13, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Statutes and Regulations</u>

29 C.F.R. §1630.2(r) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

29 C.F.R. §1630.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

29 C.F.R. §1630.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

42 U.S.C. § 12112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 15, 18

42 U.S.C. § 12117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Court Rules</u>

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Other</u>

<u>www.gov/policy/docs/guidance-inquiries.html</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## I. INTRODUCTION

This lawsuit asserts that defendant White Lake Ambulance Authority ("WLAA") violated the Americans With Disabilities Act ("ADA").[1] The ADA prohibits an employer from requiring employees to undergo a medical examination unless the employer has proof that the medical condition will impair the employee's ability to perform "essential job functions" or cause the employee to pose a "direct threat."

Plaintiff Emily Kroll's employment ended when she refused to undergo a psychological examination and treatment. Defendant's treatment of the plaintiff followed a pattern. When rumors surfaced regarding WLAA employees having sexual relations outside of marriage, the Director required these employees to seek psychological treatment as a condition to continued employment.

Emily Kroll had a long unblemished record of very good performance and the WLAA's decision to require her to undergo counseling was based on unfounded rumors and the former director's opinion that Ms. Kroll needed counseling in connection with her relationships with men. Because there is no evidence that Ms. Kroll was not performing the essential functions of her position and because there are, at the very least, questions of fact over whether Ms. Kroll's alleged medical condition posed a "direct threat," the defendant's motion should be denied.

---

[1] Plaintiff's Complaint also included a count asserting that defendant violated the gender discrimination provisions of Title VII of the Civil Rights Act of 1964. Plaintiff does not oppose defendant's motion for summary judgment on that count of plaintiff's complaint.

1

## II.    COUNTER-STATEMENT OF FACTS

### A.    The Parties.

Emily Kroll is a 33 year-old woman who lives in Whitehall, Michigan.  Ms. Kroll worked as a part-time emergency medical technician specialist ("EMT") for WLAA (Exhibit 9, Binns dep, p 38, In 13-17).  She was employed from September 2003 until April 28, 2008. (Exhibit 14, Kroll dep, p 22, In 15-17). Ms. Kroll was paid to be "on call" for various shifts and was paid a per diem for each ambulance run that she took during her on-call shifts.  Ms. Kroll estimates that she was scheduled to work around 20 to 22 - 8 hour shifts every two-week pay period. (Exhibit 14, Kroll dep, p 23, In 17 - p 24, In 1).

WLAA provides emergency medical transportation services to the communities in the Whitehall and Montague area.  During Emily Kroll's tenure with WLAA, the Director was Brian Binns. Jean Dresen was the Office Manager.  (Exhibit 11, Dresen dep, p 11).  Mr. Binns reported to a Board of Directors.   (Exhibit 9, Binns dep, p 25).

### B.    The Personnel Policies at WLAA.

WLAA adopted a Personnel Policies and Procedure Manual that included sections on work rules and the discipline and discharge of employees. (Exhibit 1, Section R, p 5-7). The manual called for progressive discipline, "taking into account the nature of the offense, the work record of the employee and other extenuating circumstances." (Id, p 7).  The manual was distributed to employees, who acknowledged receipt of the document. (Exhibit 2). The purpose of the WLAA policy manual was to notify employees about "a list of things that [they] should not be doing, and if [they] do engage in this conduct [they] will receive discipline for doing so." (Exhibit 9, Binns dep, p 34, In 5-10).

2

### C.    The Performance of Emily Kroll.

Ms. Kroll received no discipline and did not break any of the work rules. (Exhibit 11, Dresen dep, p 43)(Exhibit 9, Binns dep, p 59, 65). In fact, all of the witnesses who offered an opinion about Ms. Kroll agreed that she had good to very good skills as an EMT. For example, Brian Binns could not recall an ambulance call where Ms. Kroll was not doing her job properly. (Exhibit 9, Binns dep, p 56, ln 5-7). When asked about Ms. Kroll's performance evaluations, Mr. Binns testified as follows:

Q    And during the time period that Emily Kroll worked for you is it your recollection that when you sat down and had your verbal discussions regarding her performance that you always gave her a good performance evaluation?

A    I don't remember an annual review with her, but there were times when I would look at her run sheet or I would be aware of something that happened or somebody told me how the call went and they included Emily. And I would say, you know, good job. Good job, keep it up.

Q    Do you recall if you ever issued a suspension against Emily Kroll

A    Never.

Q    Did you ever issue a written warning against Emily Kroll?

A    No.

Q    Do you recall ever giving her a verbal reprimand?

A    I might have. I can't think of an employee that didn't receive a verbal reprimand at one time or another.

Q    Do you recall any specific verbal reprimand that you gave to Emily Kroll?

A    I can't remember right now.

(Exhibit 9, Binns dep, p 58, ln 25 - p 59, ln 19).

3

Jeffrey Holmstrom described Ms. Kroll's skill set as "very good" and their working relationship as "good." (Exhibit 13, Holmstrom dep, p 4). Mark Terpstra described Emily Kroll as a "good EMT" who did well in taking care of patients and following protocol. (Exhibit 17, Terpstra dep, p 38, ln 17-24). Jodi Osborn described Ms. Kroll as "very good partner" who "could communicate well." (Exhibit 15, Osborn dep, p 9, ln 15-23).

On April 23, 2008, Emily Kroll received a letter from the Muskegon County Medical Control Authority, commending her for being "a really good EMT that is committed to provide the best care possible." (Exhibit 3).

### D. WLAA's Practice of Mandating Counseling for it Employees.

In the mid-1980's, Brian Binns learned that one of the WLAA employees, Jeff Holmstrom, a paramedic, was involved in sexual relationships outside of marriage. (Exhibit 9, Binns dep, p 41-42). Mr. Binns described Jeff Holmstrom as a "skirt chaser" who was dating "married women or women who were committed to other individuals." (Id, p 41, ln 23 to p 42, ln 6). Because of Mr. Holmstrom's sexual proclivities, Mr. Binns required Mr. Holmstrom to undergo psychological counseling as a condition of keeping his job at WLAA. (Id, p 40, ln 2 to p 41, ln 2).

In 1993, Mr. Binns heard that Kathie Sturgis, an EMT, was dating a married man. (Exhibit 16, Sturgis dep, p 13, ln 24 - p 14, ln 1). Mr. Binns required Ms. Sturgis to undergo psychological counseling to keep her job. (Id). Although the counselor authorized Ms. Sturgis to return to work, Mr. Binns refused to rehire her. (Id, p 14, ln 10-14).

As noted in defendant's brief, WLAA was similarly concerned that plaintiff was "involved in sexual relationships with married men." (Defendant's brief, p 3). Mr. Binns equated Ms. Kroll's interest in men to Mr. Holmstrom's reputation as a skirt chaser.

4

(Exhibit 9, Binns dep, p 41).

### E.    WLAA's Ultimatum to Ms. Kroll - Supervised Counseling or Termination.

Around April 21, 2008, Jean Dresen approached Ms. Kroll about psychological counseling. (Exhibit 11, Dresen dep, p 35, ln 22-25, p 39, ln 17-22). Ms. Dresen believed that Kroll could be helped by someone who could counsel her on mental health issues. (Exhibit 11, Dresen dep, p 37, ln 20-23). Ms. Dresen is not an expert in the mental health field. (Id). Ms. Dresen did not speak with any health care providers regarding her opinion that Ms. Kroll needed psychological counseling. (Id, p 37, ln. 3-19). She only spoke with Mr. Binns, who has no psychology background. (Id). Nor did she talk with any psychiatrists, psychologists, or medical doctors about whether Kroll presented a direct threat to herself or others. (Id).

Ms. Dresen told the plaintiff that she would need to make her own financial arrangements for the counseling as WLAA would not pay for it. (Exhibit 11, Dresen dep, p 39, ln 18-22). Ms. Dresen also asked Ms. Kroll to sign a release so that WLAA could confirm that Ms. Kroll was attending the weekly counseling appointments. (Id, p 39, ln 23 to p 40, ln 22-24). Ms. Kroll did not agree to get counseling as a condition of her employment.

### F.    The Events of April 28, 2008.

On April 28, 2008, Ms. Kroll participated in an ambulance run with Jodi Osborn, a paramedic with WLAA. During the run, Osborn called Ms. Kroll a whore who was only good for getting down on her knees. (Exhibit 14, Kroll dep, p 157, ln 18-23). This accusation followed the inadvertent forwarding of a text message from Emily Kroll to Jodi Osborn about whether Ms. Kroll's former boyfriend, Josh Easton, had ever had sex with

5

Jodi Osborn. (Defendant's brief, Exhibit O).

After returning to the WLAA garage from the ambulance run, Ms. Osborn asserted that Ms. Kroll had failed to follow her orders with regard to administering oxygen to the patient. (Exhibit 15, Osborn dep, p 35). Ms. Kroll denies this accusation. No incident report was ever filed with regard to the alleged insubordination of Ms. Kroll and no discipline was ever issued to Ms. Kroll regarding this incident. (Exhibit 15, Osborn dep, p 35, ln 25 - p 36, ln 8). According to Ms. Osborn, when Ms. Kroll refused to provide the patient with oxygen upon her request, Ms. Osborn did it herself. (Id, p 35).

Ms. Kroll approached Mr. Binns later that day. During the meeting, Mr. Binns told Ms. Kroll that if she did not agree to get counseling she could no longer work for WLAA, and that she was required to meet with Mr. Binns when she completed the mandated counseling. (Exhibit 13, Holmstrom dep, p 10, ln 23 to p 11, ln 5). According to Mr. Binns, the decision to compel medical treatment was not based on her performance but because "her life was a mess and we could help her." (Exhibit 9, Binns dep, p 66). "I never had a problem with her as far as patient care." (Id). Mr. Binns told Ms. Kroll that she needed counseling "because of immoral personal behavior" and brought up assertions that she was "picking men up from the bar." (Exhibit 14, Kroll dep, p 174, ln. 18-25 to p 175, ln 1). At that point, Ms. Kroll put her pager and keys on Mr. Binns' desk and left the building. Ms. Kroll was not scheduled for any shifts following this incident.

### G. EEOC Charges.

On May 30, 2008, plaintiff filed a sex-discrimination complaint with the Michigan Department of Civil Rights ("MDCR") and the Equal Employment Opportunity Commission ("EEOC"). (Exhibit 4). On February 23, 2009, plaintiff filed a charge with the EEOC,

asserting that defendant violated the ADA by making her agreement to receive psychological counseling and treatment a condition of her employment.  On July 28, 2009, the EEOC issued plaintiff a right to sue letter relating to her complaints of sex discrimination under Title VII. (Exhibit 5).  On June 22, 2009, the EEOC issued plaintiff a right to sue letter relating to her complaints of discrimination under the ADA.  (Exhibit 6).

### H. Emily Kroll's Responses to WLAA's Asserted Facts.

#### 1. The Plaintiff's Medical Records and Defendant's Psychological Examination Report are Inadmissible and Irrelevant.

Defendant's brief relies upon statements in plaintiff's medical record that are irrelevant and inadmissible.  Exhibit A to defendant's motion includes a Community Health Services Assessment from September 2004.  This assessment followed an abortion that left Ms. Kroll with "a mixture of dejection, anxiety and guilt." (Id).  Exhibit B to defendant's brief is a record from July 2006 regarding a change in plaintiff's anxiety medication.  Defendant offers no evidence that the anxiety and episodic depression that she experienced in 2004 and 2006 was present in 2008.  Since the records do not support any contention that is at issue in this lawsuit, the records are irrelevant.  *See*, *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1248 (9th Cir. 1999) ("To protect disabled individuals from discrimination based on prejudice, stereotypes or unfounded fear, the Supreme Court has required an individualized direct threat inquiry that relies on the best current medical or other objective evidence.").

In addition, defendant was not aware of these private details disclosed in plaintiff's medical records until after these records were requested in this lawsuit.  The records are,

therefore, inadmissible in an ADA medical examination lawsuit.  *See, Fritsch v. City of Chula Vista*, 187 F.R.D. 614, 632, *modified in part*, 196 F.R.D. 562 (S.D. Ca. 1999).  In that case, the court found that the plaintiff's psychiatric and therapeutic records were not only inadmissible, but not discoverable.  The court stated:

> The court finds that the information defendants seek is not relevant to this issue.  Defendant Kaheny's decision to require plaintiff to undergo a psychiatric examination must be justified as objectively reasonable ***based upon what Kaheny knew at the time he made the decision***.  His decision cannot be justified by medical and/or psychological information pertaining to the plaintiff which was learned by defendants after the fact.

*Id.* at 632 (emphasis added).

The *Fritsch* decision is consistent with the cases and regulations interpreting the medical examination provisions of the ADA.  Business necessity, as required under the ADA, must be based on the "most current medical knowledge and/or the best available objective evidence." 29 C.F.R. §1630.2(r).

Therefore, the plaintiff's medical records should not be considered by the court in resolving defendant's motion.  The report attached to defendant's brief as Exhibit P is also both irrelevant and inadmissible as it is "after the fact" and sheds no light on what Brian Binns knew when he made the decision to compel the plaintiff to be examined and receive treatment.

### 2.      The Co-Worker Testimony is Misrepresented and Contested.

Defendant also offers assertions by co-employees to attempt to justify its decision to compel the plaintiff to undergo a medical examination and treatment.  WLAA asserts that Ms. Kroll was making calls and sending text messages while driving an ambulance.

8

But plaintiff was never disciplined for this alleged behavior and the exhibits to defendant's brief do not support the assertion. Exhibit E to defendant's brief, at the page quoted (Page 14, ln 10-16), only says that text messages were received by Josh Easton during the work day, not when Ms. Kroll was driving the ambulance. Ms. Kroll denies that she was texting while driving. (Exhibit 7, Question 7).

Jodi Osborn, who was terminated from WLAA for violating a last chance agreement by administering care to an accident victim after having consumed alcohol, also used her cell phone while driving an ambulance. (Exhibit 15, Osborn dep, p 5-6, 34). Although Brian Binns had posted a memo prohibiting WLAA personnel from using cell phones while driving (Defendant's brief, Exhibit I), Ms. Kroll was never disciplined for this alleged offense. Mr. Binns recalled giving only one verbal warning for a cell phone infraction. (Exhibit 9, Binns dep, p 53, ln 8-25). He could not recall who received the verbal warning because "it was a while ago." (Id).

Defendant's brief asserts that Ms. Kroll followed a co-worker to a grocery store. (Defendant's brief, p 6). But the former employee at issue, Amy Callison, did not see the plaintiff follow her to the store. (Exhibit 10, Callison dep, p 16). She just assumed that Ms. Kroll had followed her because plaintiff had parked next to her at a grocery store in Montague. (Id).

Ms. Callison also asserts that Ms. Kroll told her that she "wanted to go into a big black hole and disappear." (Defendant's brief, p 7). Ms. Kroll does not recall making this statement. (Exhibit 7, Question 13). When Ms. Callison asked plaintiff if she thought she needed counseling, Ms. Kroll told her that all she needed was a friend to talk to and that she had no intention of hurting herself. (Exhibit 10, Callison dep, p 19, ln 17-20). Although

9

Ms. Callison did report to Brian Binns her concerns about Ms. Kroll, she was not expecting Mr. Binns to require Ms. Kroll to seek counseling as a condition of her employment. (Id, p 23, ln 14-25, p 24, ln 1-6). Ms. Callison was just hoping that counseling could be made available to Ms. Kroll if she chose to seek it. (Id).

Defendant asserts that employees had observed plaintiff "getting into verbal confrontations and yelling at fellow employees." (Defendant's brief, p 4). But the only example of such a confrontation followed an incident where Josh Easton and Jodi Osborn improperly accessed plaintiff's personal email account though a WLAA computer connected to the internet. (Exhibit 12, Easton dep p 31-32; Exhibit 15, Osborn dep, p 10-11).

By guessing Ms. Kroll's security question correctly, they were able to re-set her password and read Ms. Kroll's email from her Yahoo account. (Exhibit 15, Osborn dep, p 10-11). Mr. Easton pleaded guilty to a criminal offense in connection with this incident, and his employment with WLAA was terminated. (Exhibit 12, Easton dep, p 57-58). Ms. Kroll was rightfully upset with Mr. Easton about this incident and should not be faulted for raising her voice in discussing her displeasure.

Defendants also report that plaintiff would cry at work over issues involving the men in her life. (Defendant's brief, p 6, 7). Only two incidents are referenced. One involved the off-duty incident where plaintiff parked her car next to Amy Callison at a grocery store. The other involved a call allegedly made when plaintiff was on call and talked to Jean Dresen at home. Ms. Dresen would also cry on occasion at work. (Exhibit 11, Dresen dep, p 26).

10

### 3. Defendant's Unsupported Assertions.

In a footnote on page 5 of its brief, defendant requests that the court draw an adverse inference against the plaintiff because she bought a new cell phone and new computer (and gave away these devices) before this lawsuit began. No authority is cited to support the relief sought and no record evidence is cited to prove the assertions made.

Moreover, there was no showing that these devices contained any relevant evidence and defendant did not file a motion to compel production of any evidence that it thought was relevant. Thus, the court should make no ruling with regard to defendant's unsupported request for an adverse interest ruling.

### III. ARGUMENT

### A. Summary Judgment Standard.

In deciding a motion for summary judgment, the Court should determine whether there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587; 106 S.Ct. 1348; 89 L.Ed.2d 538 (1986). The facts are to be considered in a light most favorable to the non-moving party, and "... all justifiable inferences are to be drawn in his favor." *Schaffer v. A.O. Smith Harvestore Prod.*, 74 F.3d 722, 727 (6th Cir.1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255; 106 S.Ct. 2505; 91 L.Ed.2d 202 (1986)) (other citations omitted).

It is the function of the Court to decide "whether the evidence presents a sufficient

11

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252.

In employment cases, "[a]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000).

**B.    The ADA Prohibits an Employer from Requiring Medical Examinations or Making Disability Inquiries Unless the Examination or Inquiry is "Job Related and Consistent with Business Necessity."**

The ADA prohibits employers from demanding that employees undergo medical examinations unless such examinations are shown to be "job related and consistent with business necessity." 42 U.S.C. §12112(d)(4)(A). The statute states:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job related and consistent with business necessity.

The regulations promulgated under the ADA confirm those two requirements. *See* 29 C.F.R. §1630.14. Subsection (B) of this portion of the ADA provides that employers may "conduct voluntary medical examinations" "which are part of an employee health program available to employees at that work site." 42 U.S.C. § 12112(d)(4)(B). But involuntary examinations are restricted to circumstances where the medical condition at issue is shown to be both "job related" and "consistent with business necessity." 42 U.S.C. §12112(d)(4)(A).

12

**C.     Employees Need Not Be Disabled in Order to Be Protected by the Medical Examination and Inquiry Provisions of the ADA.**

While the Sixth Circuit has not yet ruled on this issue, other federal circuit courts and district courts within this circuit have held that a plaintiff need not be a "person with a disability," as defined under the ADA, to proceed with a cause of action based on 42 U.S.C. § 12112(d). *See, Roe v. Cheyenne Mountain Conf. Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997); *Lentz v. City of Cleveland*, 410 F. Supp. 2d 673 (N.D. Ohio 2006); and *Fisher v. Harvey*, 2006 WL 849868, n.2 (E.D. Tenn. March 31, 2006) (collecting cases). This is also the position of the EEOC. *See*, EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act (July 27, 2000) ("EEOC Guidance"), *available at* www.eeoc.gov/policy/docs/guidance-inquiries.html. (Exhibit 8).

**D.     A Medical Examination Includes Mandated Treatment By a Mental Health Professional.**

The EEOC has defined a "medical" examination as a "procedure or test that seeks information about an individual's physical or mental impairments or health." EEOC Guidance, No. 2. (Exhibit 8, p 4). The courts have agreed. *See, Barnes v. Cochran*, 944 F. Supp. 897, 904-05 (S.D. Fla. 1996), *aff'd*, 130 F.3d 443 (11th Cir. 1997). "Medical examinations include, but are not limited to the following: . . . psychological tests that are designed to identify a mental disorder or impairment." EEOC Guidance, No. 1. (Exhibit 8, p 5).

The following factors are considered in determining whether something is a medical test: "(1) whether the test is administered by a health care professional; (2) whether the test

is interpreted by a health care professional; (3) whether the test is designed to reveal an impairment or physical or mental health; (4) whether the test is invasive; (5) whether the test measures an employee's performance of a task or measures his/her physiological responses to performing the task; (6) whether the test normally is given in a medical setting; and, (7) whether medical equipment is used." (Id). According to the EEOC Guidance, in some cases "a combination of factors will be relevant in determining whether a test or procedure is a medical examination. In other cases, one factor may be enough to determine that a test or procedure is medical." (Id).

Defendant's brief asserts that compelled "treatment" is not covered by the Act. (Defendant's brief). But no authority is cited to support the defendant's assertion. And according to the EEOC guidance discussed above, the treatment compelled by the defendant included medical tests. In fact, defendant compelled such a medical test when it required the plaintiff to undergo a psychological examination in connection with this lawsuit.

In addition, in this case, WLAA not only mandated that plaintiff receive treatment, it insisted that plaintiff authorize her counselor to provide records of the treatment to the defendant. (Exhibit 11, Dresen dep, p 39-40). In addition, Brian Binns insisted that plaintiff would only be entitled to return to work after he concluded that the plaintiff was ready. (Exhibit 13, Holmstrom dep, p 10). At the very least, there are questions of fact over whether the treatment compelled by defendant would have encompassed medical tests. *See, Borgus v. SmithKline Beechom Corp.*, 2004 WL 2095534 (W.D.N.Y. 2004) ("The treatment agreement upon which [Plaintiff's] employment was conditioned was improperly invasive; fact issues existed over whether treatment was justified under business necessity

14

standard"). (Id, *5).

E.     **The Prohibitions Against Medical Examinations Are Not Subject to the McDonnell-Douglas Burden Shifting Analysis.**

A prohibited medical inquiry or unlawful medical examination claim, unlike a general employment discrimination claim, does not implicate the familiar McDonnell-Douglas analysis requiring proof of a prima facie case and rebuttal of legitimate nondiscriminatory reasons for discharge. *See*, *Gonzalez v. Sandoval County*, 2 F. Supp. 2d 1442, 1445 (D. N.M. 1998). "The ADA provision on prohibited inquiries stands alone so that a prohibited inquiry in and of itself may be a violation." *Id.* (citing 42 U.S.C. § I2112(d)(4)(A); 42 U.S.C. § 12117(a) (making Title VII remedies available for violation of "any provision" of the ADA); 29 C.F.R. § 1630.13; 29 C.F.R. Pt. 1630, App. § 1630.13; *Roe v. Cheyenne Mountain Conf. Resort, Inc.*, 124 F.3d at 1229 (10th Cir. 1997); *Doe v. Kohn Nast & Graf*, 866 F. Supp. 190, 197 (E.D. Pa.1994)). *Cf*, *Cavin v. Honda of America Mfg. Inc.*, 346 F.3d 713, 723 (6th Cir. 2003) (Employee "need only comply with the requirements of the [FMLA] to invoke its protections").

F.     **A Medical Examination or Inquiry About a Disability is Only Job Related and Consistent with Business Necessity When the Employer Has a Reasonable Belief, Based on Objective Evidence, that a Medical Condition Will Impair an Employee's Ability to Perform Essential Job Functions or Cause the Employee to Pose a Direct Threat.**

The business necessity standard "is quite high and is not to be confused with mere expediency." *Cripe v. City of San Jose*, 261 F. 3d 877, 890 (9th Cir. 2001). "To prove business necessity, the employer must show that: (1) the asserted business necessity is vital to the business; (2) the examination or inquiry genuinely serves the asserted business

15

necessity; and (3) the request is no broader or more intrusive than necessary." *Borgus v. SmithKline Beecham Corp.*, 2004 WL 2095534 (W.D. N.Y. September 20, 2004) (citing *Conroy v. New York State Dep't. of Correctional Services*, 333 F.3d 88, 97-98 (2d Cir. 2003)).

There must also be "significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job." *Sullivan v. River Valley School Dist.*, 197 F.3d 804, 811 (6th Cir. 1999). The examination or inquiry "must, at minimum, be limited to an evaluation of the employee's condition only to the extent necessary under the circumstances to establish the employee's fitness for the work at issue." *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 515 (3d Cir. 2001).

The employer has the burden of showing that its inquiry is job related and consistent with business necessity. *Fredenburg v. Contra Costa County Dept. of Health Services*, 172 F.3d 1176, 1182 (9th Cir. 1999).

### G. Job Relatedness and Business Necessity are Fact Issues and Not Issues of Law.

"[W]hether an inquiry is job related and consistent with business necessity is a fact-intensive inquiry." *Gonzalez v. Sandoval County*, 2 F.Supp. 2d 1442, 1444 (D. N.M. 1998). In *Gonzalez*, a case involving a deputy sheriff who was terminated in connection with a prohibited inquiry about a potential disability, the court denied the employer's summary judgment motion, stating:

> A reasonable jury could have found, viewing this evidence in a light most favorable to the plaintiff, that any post-employment disability related inquiry was unnecessary because plaintiff was having no difficulty effectively performing the essential functions of his position.

16

*Id.* at 1445.

Under the applicable regulations, "[t]he determination that an individual poses a 'direct threat' shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies upon the most current medical knowledge and/or the best available objective evidence." 29 C.F.R. §1630.2(r). Determination of the propriety of an asserted business necessity is best reserved for trial. *Transp. Workers, Local 110 v. New York City Transp. Auth.,* 2004 WL 830289 at *1, n.10 (S.D.N.Y. April 13, 2004).

### H. Whether a Medical Condition Rendered Emily Kroll "Incapable of Performing Her Job" or Caused Her To Be A "Direct Threat" Are Disputed Fact Issues.

As noted in the facts portion of this brief, WLAA lacked evidence that Ms. Kroll's alleged emotional instability had rendered her no longer "capable of performing [her] job." *Sullivan v. River Valley School Dist.,* 197 F.3d 804, 811 (6th Cir. 1999). All of the WLAA employees and former employees agree that whatever personal issues that Ms. Kroll was dealing with in March 2008, she remained fully capable of performing her job.

- Mark Terpstra - Emily Kroll was a good EMT. She did well in taking care of patients and following protocol. (Exhibit 17, p 38, ln 7-10).

- Jean Dresen - Emily Kroll was never disciplined under the WLAA work rules. (Exhibit 11, p 43, ln 17-25).

- Jodi Osborn - Emily Kroll was "very good" as an EMT and partner. (Exhibit 15, p 9, ln 15-23).

- Jeff Holmstrom - Emily Kroll's skill set as an EMT Basic was "very good." "No observed problems with performance or behavior." (Exhibit 13, p 4, ln 7-23).

17

While defendant argues that Ms. Kroll's co-workers supported Mr. Binns' conclusion that plaintiff present a "direct threat," the conclusions and unsupported opinions reached by plaintiff's co-workers did not provide WLAA with justification for compelling the plaintiff to undergo counseling as a condition to retaining her job. At the very least, there are disputed facts for a jury to resolve on this issue.

First, defendant could have taken other actions, such as disciplining the plaintiff, if her alleged emotional instability was affecting her job. The defendant's work rules prohibited "violation of safety rules," "unnecessary shouting," and "use of offensive or abusive language to any employee." (Exhibit 1, p 6, nos. 7, 17, 19). Had Mr. Binns concluded that plaintiff had violated such rules, he could have simply warned or suspended the plaintiff as called for under the WLAA progressive discipline policy. As noted by the EEOC, "Once an employee is on the job, his/her actual performance is the best measure of ability to do the job." (EEOC Guidance, Exhibit 8, No. 4). Yet Mr. Binns did not issue any warnings to the plaintiff regarding her job performance. Thus, a reasonable jury could conclude that mandated psychological treatment was "broader and more intrusive" than necessary. (See cases cited at pages 15-16 of this brief).

Second, defendant could have offered the plaintiff an opportunity to take time off from work or allowed her to participate in a voluntary employee assistance program. (See EEOC Guidance, Exhibit 8, No. 20, "the ADA allows employers to conduct voluntary medical examinations and activities...without having to show that they are job related and consistent with business necessity"). See also, 42 U.S.C. § 12112(d)(4)(B).

Third, defendant had no basis to conclude that plaintiff had a "medical condition" in the first place. "Generally, a disability-related inquiry or medical examination of an

18

employee may be 'job-related and consistent with business necessity' when an employer 'has reasonable belief, based on objective evidence, that (1) an employee's ability to perform essential job functions will be impaired **by a medical condition**; or (2) an employee will pose a direct threat **due to a medical condition**." (EEOC Guidance, Exhibit 8, No. 5)(emphasis added).

WLAA did not think that Ms. Kroll had a medical condition and no medical care providers were consulted with regard to whether Ms. Kroll had a medical condition. (Exhibit 11, Dresen dep, p 57-60). No "individualized assessment" was made on the basis of "objective evidence" and it appears that WLAA simply relied upon "general assumptions." As noted below, WLAA's rash decision fell far short of what the ADA requires:

> An employer's reasonable belief that an employee's ability to perform essential job functions will be impaired by a medical condition or that s/he will pose a direct threat due to a medical condition must be based on objective evidence obtained, or reasonably available to the employer, prior to making a disability-related inquiry or requiring a medical examination. Such a belief requires an assessment of the employee and his/her position and cannot be based on general assumptions.

(EEOC Guidance, Exhibit 8, No. 5).

"Rumors" and non "reliable" information learned from third persons will not suffice to show support for a medical examination or a medical inquiry. (Id). Yet it appears that Brian Binns relied exclusively on second and third-hand information, along with his own beliefs about curing sexual infidelity through mandated counseling, to support his decision.

As in the *Gonzalez* case, a reasonable jury could conclude that (a) defendant had no objective evidence that plaintiff suffered from a medical condition or (b) that if plaintiff had a medical condition it was not affecting her ability to perform the essential functions of her job.

19

Alternatively, a reasonable jury could find that the required medical examination "did not genuinely serve the asserted business necessity," or that the request was "broader than necessary." *Borgus v SmithKline Beecham Corp.*, 2004 W.L. 2095534 (W.D.N.Y. 2004). For all of these reasons, summary judgment is not appropriate.

Finally, summary judgment should not be granted to defendant because defendant did not agree to pay for the counseling it mandated. (Exhibit 11, Dresen dep, p 39). If the employer compels an employee to see a health care professional, it must "pay all costs associated with the employee's visit(s)." (Exhibit 8, No. 12, p 12). For this reason alone, the defendant's motion should be denied.

## IV. CONCLUSION

For the foregoing reasons, plaintiff respectfully requests this court to deny defendant's motion for summary judgment.

BOS & GLAZIER, P.L.C.
Attorneys for Plaintiff

Date: July 7, 2010                By:  */s/ Bradley K. Glazier*
                                     Bradley K. Glazier (P35523)

BUSINESS ADDRESS:
990 Monroe Avenue, N.W.
Grand Rapids, MI 49503
(616) 458-6814

.114890

20