## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EMILY C. KROLL,

                    Plaintiff,

                                        Civil Action No.: 1:09-CV-626

vs.

                                        HON. GORDON J. QUIST

WHITE LAKE AMBULANCE
AUTHORITY,

                    Defendant.

---

Bradley K. Glazier (P35523)
BOS & GLAZIER, P.L.C.
Attorneys for Plaintiff
990 Monroe Avenue, N.W.
Grand Rapids, MI 49503
(616) 458-6814

Robert A. Callahan (P47600)
PLUNKETT COONEY
Attorneys for Defendant
950 Trade Centre Way, Ste. 310
Kalamazoo, MI 49002
(269) 382-5935

Douglas M. Hughes (P30958)
WILLIAM HUGHES & COOK PLC
Co-Counsel for Defendant
120 W. Apple Avenue
P.O. Box 599
Muskegon, MI 49443
(231) 727-2119

---

## PLAINTIFF'S BRIEF IN SUPPORT OF
## MOTION TO ALTER OR AMEND JUDGMENT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

       A.     The Standard of Review for Rule 59 Motions. . . . . . . . . . . . . . . . . . . .  1

       B.     White Lake Ambulance Authority's Decision to Compel
             Emily Kroll to Receive Psychological Counseling as a
             Condition of her Employment Constitutes a Psychological
             Evaluation as Defined in the ADA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

           1.     A "Clinical Evaluation" Performed by a
                 Psychologist Is a Medical Examination under the ADA. . . . . . . . .  2

           2.     A Reasonable Inference from the Evidence Presented
                 Is that a Clinical Evaluation would have Been Performed
                 As Part of the Psychologist's Treatment Program. . . . . . . . . . . .  6

III.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

**TABLE OF AUTHORITIES**

Page

<u>Cases</u>

*Agristor Financial Corp. v. Van Sickle*,
    967 F.2d 233 (6th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Barnes v. Cochran*,
    944 F. Supp. 897 (S.D. Fla. 1996), *aff'd* 130 F.3d 443 (1997). . . . . . . . . . . . 4, 6

*Borgus v. Smith Kline Beechom Corp.,*
    2004 WL 2095534 (W.D.N.Y. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Intera Corp. v. Henderson*,
    428 F.3d 605 (6th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Jackson v. Lake County*,
    2003 WL 22127743 (N.D. Ill. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Jaques v. Herbert*,
    447 F. Supp. 2d 858 (N.D. Ohio 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Karraker v. Rent-a-Center*,
    411 F.3d 831 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Law v. Garden State Tanning*,
    159 F. Supp. 2d 787 (E.D. Pa. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Russell v. Delco Remy Div. Of General Motors Corp.,*
    51 F.3d 746 (7th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Scott v. Napolitano*,
    2010 WL 1797032 (S.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Court Rules</u>

Fed. R. Civ. P. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. 59. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

<u>Other</u>

www.gov/policy/docs/guidance-inquiries.html. . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

# I.  INTRODUCTION

Plaintiff has moved this court, pursuant to Rule 59 of the Federal Rules of Civil Procedure, to reconsider its order granting the defendant's motion for summary judgment. In its Opinion, the court dismissed Emily Kroll's Americans With Disabilities Act ("ADA") claim on the ground that "[T]he counseling or therapy did not constitute a medical examination." (Court's Opinion, p 4).  While this argument was raised in defendant White Lake Ambulance Authority's ("WLAA's") summary judgment brief, the argument was limited to a half page and no citation to the record or to any supporting authority was included in WLAA's brief.  (Defendant's summary judgment brief, p 10).  Nor was any authority on this issue included in defendant's reply brief.  Because this dispositive issue was not addressed extensively in plaintiff's summary judgment briefing in light of defendant's briefing, because the court drew inferences from the facts favorable to WLAA, and because the court's Opinion is contrary to the law, plaintiff requests that the court reconsider its order granting WLAA's motion for summary judgment.

# II.  ARGUMENT

## A.    The Standard of Review for Rule 59 Motions.

Fed. R. Civ. P. 59(e) states: "A motion to alter or amend judgment must be filed no later than 28 days after the entry of the judgment."  The court entered its judgment on August 19, 2010, making this motion timely.  While the rule does not discuss the specific reasons for granting a Rule 59 motion, the Sixth Circuit has held that a court should alter a judgment if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.  *See,*

1

*Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).  "The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings."  *Russell v. Delco Remy Div. of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995).  Plaintiff's motion asserts that the court should correct a clear error of law and amend its judgment to prevent manifest injustice.

**B.    White Lake Ambulance Authority's Decision to Compel Emily Kroll to Receive Psychological Counseling as a Condition of her Employment Constitutes a Psychological Evaluation as Defined in the ADA.**

In its Opinion, the court stated:  "The court need not determine whether WLAA had a reasonable basis to justify its demand that Kroll attend counseling sessions, because contrary to Kroll's claim, counseling alone does not constitute a medical examination under the ADA."  (Opinion, p 6).  For the reasons outlined below, a reasonable inference to be drawn from the evidence presented in the summary judgment documents was that the counseling mandated by WLAA for Emily Kroll included a "psychological evaluation," and such evaluations are regulated by the ADA.

**1.    A "Clinical Evaluation" Performed by a Psychologist Is a Medical Examination under the ADA.**

The court's Opinion states that neither the ADA nor the regulations and interpretative guidance issued by the EEOC define the term "Medical Examination." (*Id*). However, the EEOC's enforcement guidance does include a definition of the term "Medical Examination."  The guidance document states as follows:

> 2.    What is a "medical examination?"
>
> A "medical examination" is a procedure or test that seeks information about an individual's physical or mental impairments or health.

EEOC, *Enforcement Guidance*: *Disability Related Inquiries and Medical Examinations of Employees under the Americans With Disabilities Act*, No. 915.002, ¶ 2 (July 27, 2000). This document is available at http://www.eeoc.gov/policy/docs/guidance/inquiries.html. ("EEOC Enforcement Guidance").

According to the EEOC, "psychological tests that are designed to identify a mental disorder or impairment" are "medical examinations," while "psychological tests that measure personality traits such as honesty, preferences, and habits" are not. EEOC Enforcement Guidance, ¶ 2. The EEOC also list seven factors that "may be relevant in determining whether a test or procedure is a medical examination." (*Id*). Those factors are:

> (1)   Whether the test is administered by a health care professional;
>
> (2)   Whether the test is interpreted by a health care professional;
>
> (3)   Whether the test is designed to reveal an impairment of physical or mental health;
>
> (4)   Whether the test is invasive;
>
> (5)   Whether the test measures an employee's performance of a task or measures his/her physiological responses to performing a task;
>
> (6)   Whether the test is normally given in a medical setting; and
>
> (7)   Whether medical equipment is used.

(*Id*).

3

As noted in Plaintiff's Brief in Opposition to the Defendant's Motion for Summary Disposition, the court in *Barnes v. Cochran*, 944 F. Supp. 897 (S.D. Fla. 1996), found that a psychologist's "clinical evaluation" was a prohibited "medical examination" under the ADA.   In the *Barnes* case, the court considered whether a sheriff department's pre-employment psychological evaluation of a corrections deputy applicant constituted a prohibited pre-offer medical examination under the ADA.   The court in the *Barnes* decision found that it was and stated:

> This conclusion is compelled by the nature and extent of the examination performed, as reflected in Dr. Stock's report, and by the fact that the examination was performed by a limited licensed psychologist.  Dr. Stock's report reflects that plaintiff was referred for a "clinical evaluation."  Dr. Stock's questions covered not only a wide range of incidents in plaintiff's life, but probed areas tending to disclose specific psychological disabilities, such as Post-Traumatic Stress Disorder.

*Id.* at 904.

The court in *Barnes* rejected the defendant's argument that the only medical examinations that are impermissible under the ADA are those where the examiner intends to determine whether the applicant has a disability.  *Id.* at 904.  Other courts have agreed that administration of the MMPI, even without an evaluation of the test results by a psychologist, is a "medical examination" under the ADA.  *See*, *Karraker v. Rent-A-Center*, 411 F.3d 831 (7th Cir. 2005).

This court's Opinion did not address the *Barnes* decision, and *Barnes* is the closest case to the circumstances of this case.   Nor did the court address the case of *Borgus v. Smithkline Beecham Corp.*, No. 02-CV-6472, 2004 WL 2095534, *5 (W.D.N.Y. 2004), where the court denied the defendant's summary judgment motion because the court was

4

"unable to find the treatment agreement . . . was no more intrusive than necessary under the circumstances."

The court relied upon *Jaques v. Herbert*, 447 F. Supp. 2d 858 (N.D. Ohio 2006), as a case that directly addressed whether a drug treatment program is a medical examination. But the *Jaques* case did not address psychological treatment. At issue in *Jaques* was a stipulation in a last-chance agreement that plaintiff attend a drug treatment program. The court found that "[T]here is no evidence that the treatment program involved the assessment of plaintiff's medical condition or the reporting of that condition back to the company." The *Jaques* case is distinguishable because there was no psychological examination or treatment that was a component of the drug treatment program and no report to the company about the results of the treatment. In fact, in a case cited by the court, *Law v. Garden State Tanning*, 159 F. Supp. 2d 787 (E.D. Pa. 2001), the court assumed that a drug treatment program that was coupled with a psychiatric examination was a "medical examination" under the ADA.

The *Jaques* case is also distinguishable because the agreement in that case was negotiated with the employee's union and the plaintiff voluntarily met with the counselor for the employee assistance plan. Voluntary EAP plans are specifically exempted from the medical examination restrictions of the ADA. *See,* EEOC Enforcement Guidance, ¶ 20. The Enforcement Guidance states that "[A]n EAP counselor may ask employees about their medical condition(s) if s/he: (1) does not act for or on behalf of the employer; (2) is obligated to shield any information the employee reveals from decision makers; and (3) has no power to affect employment decisions." *Id*. In this case, as noted in the primary brief and the court's Opinion, Emily Kroll was not a voluntary participant in an EAP program and

she was required to sign an authorization to release her medical records to WLAA.   For all of the foregoing reasons, the *Jaques* case does not support the court's conclusion that a treatment program is not a "medical examination."   The cases show that a treatment program can include a medical examination and treatment.  It was reasonable to infer that the treatment program compelled by the WLAA would have included a "medical examination" of Ms. Kroll.

### 2.    A Reasonable Inference from the Evidence Presented Is that a Clinical Evaluation would have Been Performed As Part of the Psychologist's Treatment Program.

As noted in the court's Opinion, under Fed. R. Civ. P. 56, all inferences from the evidence must be drawn in a light most favorable to the non-moving party. (Opinion, p 5, citing *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992)).   In this case, the court inferred from the evidence that the counseling mandated by WLAA would not have involved any clinical evaluation of or psychological examination of Ms. Kroll. There was, however, no evidence presented by defendant to justify the court's inference that mandated counseling would not have included a clinical evaluation of Ms. Kroll.

A reasonable inference would have been that, in order to provide the mandated treatment, the psychologist selected by WLAA would have conducted a clinical evaluation. In fact, it would have been reasonable to infer that the psychologist may have asked questions similar to those that Dr. Stock put to the plaintiff in the *Barnes* case, including a "wide range of incidents in plaintiff's life" and "probed areas tending to disclose specific psychological disabilities."  *Barnes v. Cochran*, 944 F. Supp. 897, 904 (S.D. Fla. 1996). Such inquiries are part of any psychological counseling program.

For example, in the *Barnes* case, the psychologist performed the Minnesota Multi-

6

phasic Personality Inventory Test (MMPI) and other tests.  The expert retained by WLAA in this case, Joseph J. Auffrey, Ph.D., similarly performed the MMPI, the Rorschach Inkblot Test, a clinical examination, and psychometric testing.  (Defendant's summary judgment brief, Exhibit P). The court's Opinion states it was rejecting "Kroll's suggestion that WLAA compelled her to undergo a medical test when it required her to submit to a psychological examination in connection with this lawsuit.  (Opinion, p 8, n 3).  But Ms. Kroll does not take the position that the defense medical examination conducted by Dr. Auffrey was prohibited by the ADA.  Rather, the testing conducted by Dr. Auffrey supports Ms. Kroll's assertion that WLAA was expecting that a psychologist would both test and treat Mr. Kroll as a condition of her continued employment.

Throughout defendant's reply brief, WLAA stated that Brian Binns determined that plaintiff needed "psychological treatment and therapy." (Defendant's reply brief, p 2, 5, and 8).  It was a reasonable inference that any psychologist would have been required to conduct a clinical examination before administering treatment and therapy. In fact, the failure to assess Mr. Kroll's need for treatment and therapy before administering therapy would likely have been malpractice.

The record also supports plaintiff's contention that defendant WLAA expected the psychologist  to investigate whether Emily Kroll was a person with a disability.  For example, Brian Binns requested that Emily Kroll see a psychologist to discuss issues related to her mental health.  (Exhibit 1, Binns dep, p 60, ln 12-15).  During the meeting where Emily Kroll was terminated, Brian Binns told Ms. Kroll that if she did not complete counseling she could no longer work for WLAA and that she was required to see Binns when she completed the mandated counseling.  (Exhibit 2, Holmstrom dep, p 10, ln 23-25,

7

p 11, ln 1-5). This testimony certainly permits the reasonable inference that Binns was looking to the psychologist and Ms. Kroll to confirm that the treatment had succeeded and that plaintiff was well enough to return to work. Such treatment would have necessitated a clinical evaluation of the plaintiff.

The court's Opinion states: "In this case, nothing in the record suggests that the counseling WLAA required Kroll to attend would have involved or required psychological testing." (Opinion, p 8). However, there was nothing in the record to indicate that the counseling compelled by WLAA would not have required psychological testing. And it is a reasonable inference that the counseling at issue would have required at least some psychological testing. At the very least, it was premature for the court to make a ruling with regard to what would have transpired with the testing as defendant presented no evidence regarding what the counselor would or would not have done as part of the counseling regime.

The court also concluded that only one of the seven EEOC factors used to determine whether a test or procedure is a medical examination would have been satisfied by the compelled counseling demanded by WLAA. (Opinion, p 8). But factors (2), (3), and (6) would also have been met. A health professional - a psychologist - was to both administer and interpret the information provided at the sessions (Factor 2). For the reasons discussed above, it would have been necessary for the psychologist to have tested Ms. Kroll to determine whether she was suffering from an impairment of her mental health (Factor 3). The plaintiff would also have received the counseling or testing at the psychologist's office (Factor 6). Therefore, four of the seven factors for a medical examination appear to have been met by the compelled treatment. "One factor may be

8

enough to determine that a test or procedure is medical."  EEOC Enforcement Guidance, ¶ 2.

The court also inferred from Jean Dressen's self-serving testimony that the release of Mr. Kroll's medical records was sought "only to confirm that [Kroll] was attending the weekly meetings."   (Opinion, p 8, n 3).  But Ms. Kroll's complete medical records would not have been necessary to evaluate her attendance at the sessions.  And Jean Dressen's statement about the purpose for requesting the records also appears contrary to Brian Binns's testimony that Ms. Kroll would be required to meet with him after she completed the mandated counseling and before she was permitted to return to work.  (Holmstrom dep, p 10-11).  If defendant was only interested in confirming that Ms. Kroll attended the counseling sessions, why was a meeting with Mr. Binns a prerequisite to her return to work. Defendant's request for plaintiff to sign an authorization to release medical records also independently violates another provision of the EEOC Guidance.  Even when an employee requests a reasonable accommodation, the "employer cannot ask for employee's complete medical records because they are likely to contain information unrelated to the disability at issue and the need for accommodation."  EEOC Enforcement Guidance, ¶10.

Other courts have found requests for psychological records to be a factor supporting a violation of the medical examination provisions of the ADA.  *See, Jackson v. Lake County,* No. 01-C-6528, 2003 WL 22127743 (N.D. Ill. 2003).  *See also, Scott v. Napolitano*, No. 08-CV-0735 BTM (JMA), 2010 WL 1797032 (S.D. Cal. 2010) (medical questionnaire submitted to employee asking about prior treatment for mental conditions and medications found to violate the ADA medical examination provisions).

At the very least, summary dismissal of this case without information about what would have taken place at the counseling sessions was premature.  And plaintiff had no reason to include an extensive discussion of this topic in her brief opposing defendant's summary judgment motion, as defendant's brief did not include a single citation to support its argument that the forced treatment was not a medical examination.

### IV.  CONCLUSION

For the foregoing reasons, plaintiff, Emily Kroll,  respectfully requests this court to reconsider its decision granting the WLAA's motion for summary judgment and to issue a revised order denying the defendant's motion.

BOS & GLAZIER, P.L.C.
Attorneys for Plaintiff


Date: September 13, 2010          By:____*/s/ Bradley K. Glazier*_____
                                              Bradley K. Glazier (P35523)

BUSINESS ADDRESS:
990 Monroe Avenue, N.W.
Grand Rapids, MI 49503
(616) 458-6814

.115158

10