UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

EMILY C. KROLL,

    Plaintiff,

v.                                              Case No. 1:09-CV-626

WHITE LAKE AMBULANCE                 HON. GORDON J. QUIST
AUTHORITY,

    Defendant.
_____/

**OPINION**

**I. PROCEDURAL BACKGROUND**

       This case returns to this Court on remand from the United States Court of Appeals for the Sixth Circuit. *See Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809 (6th Cir. 2012). In her three-count Complaint, Plaintiff, Emily C. Kroll, alleged that her former employer, White Lake Ambulance Authority (WLAA), violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* (Title VII), when it required her to attend counseling as a condition of retaining her employment. Following discovery, WLAA filed a Motion for Summary Judgment. Kroll filed a response, in which she stipulated to dismiss her Title VII claim.

       On August 19, 2010, the Court issued an Opinion and Order granting WLAA summary judgment on all claims. (Dkt. # 57.) The Court concluded that Kroll waived her ADA retaliation claim by failing to address it in her response. As for Kroll's remaining ADA claim—that WLAA violated the ADA's medical examination/inquiry prohibition by requiring her to obtain psychological counseling as a condition of retaining her employment—the Court concluded that the claim failed because WLAA's requirement that Kroll obtain psychological counseling did not

constitute a medical examination under the ADA. Therefore, the Court did not address WLAA's argument that its directive to Kroll was "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Kroll filed a timely Motion for Reconsideration regarding the ADA claim, which the Court denied on September 20, 2010. (Dkt. # 61.)

Kroll appealed the Court's Orders to the Sixth Circuit solely with regard to the medical examination/inquiry ADA claim. The Sixth Circuit reversed this Court's grant of summary judgment, holding that Kroll presented sufficient evidence from which a jury could conclude that the psychological counseling WLAA required Kroll to receive constitutes a "medical examination" under 42 U.S.C. § 12112(d)(4). *Kroll*, 691 F.3d at 819–20. The Sixth Circuit therefore remanded the case to this Court for further proceedings.

WLAA has renewed its Motion for Summary Judgment, in which it requests the Court to consider the issue it previously declined to reach—whether WLAA had a reasonable basis to require Kroll to obtain psychological counseling. (Dkt. # 70.) For the following reasons, the Court concludes that it did and will grant WLAA summary judgment on Kroll's ADA claim. In addition, the Court will deny Kroll's Motion to Strike Defendant's Reply Brief in Support of Renewed Motion for Summary Judgment. (Dkt. # 75.)

## II. FACTS

WLAA is a governmental entity formed by the Cities of Whitehall and Montague, Michigan, to provide emergency medical services to residents of those communities. Kroll was employed by WLAA from September 2003 until April 28, 2008 as a part-time Emergency Medical Technician ("EMT"). Kroll's duties as an EMT included driving ambulances and assisting paramedics with the medical care of the patients they transported. During Kroll's employment with WLAA, Brian Binns was WLAA's Director and Jean Dresen was WLAA's office manager.

Kroll performed her EMT job well and was never disciplined. Kroll's co-workers believed that she was a good employee and had excellent job skills.

In late 2007 or early 2008, Kroll, who was single, began an affair with Joshua Easton, a married WLAA employee. Their relationship lasted approximately four months and was often tumultuous. Easton had promised Kroll that he would get a divorce, but he never carried through with his promise. Easton and Kroll often argued and were jealous of each other having relationships outside of their own extra-marital affair. For example, on Valentine's Day, 2008, Easton gave Kroll roses and later found out that another man had sent her flowers. Easton obtained Kroll's cell phone and checked her messages to determine who had sent her flowers. Kroll and Easton got into a fight after Kroll learned that Easton had checked her messages. On another occasion, Easton hacked into Kroll's e-mail account and read her e-mails. When Kroll learned that Easton had hacked into her e-mail account, she yelled at Easton at work. Eventually, Kroll suspected that Easton was having a sexual relationship with Jodi Osborn, another female WLAA employee.

During this time, WLAA employees began sharing their concerns about Kroll's mental or emotional health with Dresen and Binns. Amy Callison, a WLAA employee and friend of Kroll, told Binns she was concerned that Kroll was suicidal because Kroll was so emotional. (Callison Dep. at 12, 14, dkt. #50-11.) Callison described an incident in which she came out of a grocery store and found Kroll parked next to Callison's car, upset and crying. (*Id.* at 15–16.) Callison concluded that Kroll had followed her to the store and thought Kroll's behavior was "strange." (*Id.* at 16.) Callison also said that on several occasions Kroll told her that she wanted to go into a "big black hole," which Callison interpreted as a cry for help. (*Id.* at 18–19.) Callison suggested to Kroll that she needed counseling, but Kroll responded that she only needed to talk to a friend. (*Id.* at 15.)

Other employees complained to Dresen and Binns that Kroll's personal life was affecting her work performance. (Dresen Dep. at 27, dkt. # 50-12; Osborn Sodini Dep. at 22, dkt. # 50-5.)

3

Several employees commented that Kroll often cried at work. (*Id.* at 31; Betka Dep. at 15, dkt. 50-8.) On one occasion, while at work, Kroll called Dresen at home and was crying during the call. (Dresen Dep. at 23.) Dresen told Binns about this call because Kroll was on duty. (*Id.* at 23.) Apart from crying, WLAA employees told Dresen and Binns that Kroll used her cell phone while driving the ambulance—sometimes with patients on board—which WLAA policy prohibited. Mark Terpstra reported that on at least one occasion, Kroll cried as she argued with Easton on her cell phone while en route to the hospital. (Terpstra Dep. at 27, 32, dkt. # 50-9.) Terpstra also observed Kroll texting while driving the ambulance. (*Id.* at 40.) Jodi Osborn reported the same behaviors to both Dresen and Binns. (Osborn Sodini Dep. at 28–30.)

On or around April 21, 2008, after seeking input from various WLAA employees about Kroll's emotional stability, Binns instructed Dresen to contact Hackley Work Place Health to try to arrange counseling for Kroll. After making the call, Dresen told Kroll that she had arranged counseling for Kroll and that Kroll would need to contact the Red Cross to inquire about financial assistance since she did not have insurance. (Dresen Dep. at 39.) Dresen also requested that Kroll sign a release so WLAA could verify that Kroll was attending the weekly sessions, as Kroll had previously agreed to counseling but lied to WLAA about her attendance. (*Id.* at 39-40.) Although it is not clear from the record, it appears that Kroll rejected Dresen's request that she attend the counseling.

On April 28, 2008, the issue of counseling came to a head as a result of an incident between Kroll and Jodi Osborn, a paramedic with whom Kroll had been working. Tension between the two was apparently high that day because prior to the incident Kroll sent an e-mail to Osborn intended for Easton that asked: "have u done jodi? Or anything sexually with her at all?" According to Osborn, while Osborn and Kroll were administering care to a patient that day, Osborn asked Kroll

4

to administer oxygen to the patient, but Kroll ignored her request, even though Kroll was standing right next to Osborn and should have heard her request. Ultimately, Osborn administered the oxygen herself. (Osborn Sodini Dep. at 35.) Upon returning to the WLAA garage, Osborn reported this incident to Binns. (*Id.* at 36.) Later that day, Kroll and her father spoke with Binns at the WLAA. Binns told Kroll that she needed to go to counseling and that she would be permitted to keep her job only if she completed the counseling. (Holmstrom Dep. at 10-11, dkt. #53-3.) Kroll told Binns that she would not go to counseling, put her key and pager on Binns's desk, and walked out. (*Id.* at 11.) Kroll has not since worked at WLAA.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### IV. DISCUSSION

**A.      Motion to Strike**

As an initial matter, the Court addresses Kroll's Motion to Strike WLAA's Reply Brief in Support of WLAA's Renewed Motion for Summary Judgment. Kroll argues that WLAA's reply

5

brief is improper because it raises new arguments and cites testimony not addressed in WLAA's opening brief. Having reviewed WLAA's reply brief, the Court finds no basis to strike it. While the brief does cite evidence and raise arguments not set forth in WLAA's brief in support of its Renewed Motion for Summary Judgment, WLAA cited the same evidence and presented the same arguments in its opening brief supporting its original Motion for Summary Judgment. Because the Court has considered the original briefs, including Kroll's response, in analyzing WLAA's instant motion, Kroll has not been prejudiced in any manner by WLAA's reply brief.

**B.     Motion for Summary Judgment**

Kroll alleges that WLAA violated the ADA's medical examination/inquiry prohibition when it required her to attend psychological counseling. The provision at issue states:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A). This provision was enacted to ensure that employers do not require medical tests or make disability-related inquiries of employees that do not serve a legitimate business interest. *Ward v. Merck & Co.*, No. Civ. A. 04-CV-5996, 2006 WL 83114, at *8 (E.D. Pa. Jan. 9, 2006) (quoting 56 Fed. Reg. 35,726, 35,750 (July 26, 1991)). In light of the Sixth Circuit's decision, the Court must assume for purposes of WLAA's motion that the psychological counseling that Binns ordered constitutes an "medical examination" for purposes of § 12112(d)(4)(A).

An employer may require an employee to submit to a medical examination "that is job-related and consistent with business necessity." 29 C.F.R. § 1630.14(c); *see also EEOC v. Prevo's Family Mkt.*, 135 F.3d 1089, 1094 (6th Cir. 1998) (noting that whether an employer may require an employee to submit to a medical examination turns "on the nature of job-relatedness and what constitutes a business necessity"). The Equal Employment Opportunity Commission (EEOC)

6

advises that an examination is permissible where the employer "has a reasonable belief based on objective evidence, that: (1) an employee's ability to perform essential job functions will be impaired by a medical condition; or (2) an employee will pose a direct threat due to a medical condition." EEOC, Enforcement Guidance: Disability-Related Inquiries and Med. Examinations of Employees Under the Americans With Disabilities Act, No. 915.002 (July 27, 2000) ¶ 5, available at http://www.eeoc.gov/policy/docs/guidance-inquiries.html. (last visited May 15, 2013); *see also Denman v. Davey Tree Expert Co.*, 266 F. App'x 377, 379 (6th Cir. 2007) ("An employer's request for a medical examination is job-related and consistent with business necessity when: (1) the employee requests an accommodation; (2) the employee's ability to perform the essential functions of the job is impaired; or (3) the employee poses a direct threat to himself or others."). A medical examination is permissible only if there is "significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job." *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir. 1999). Behavior that is "merely annoying or inefficient" cannot justify a request for an exam.[1] *Id.*

The employer bears the burden of demonstrating job-relatedness and business necessity. *See Fredenburg v. Contra Costa Cnty. Dep't of Health Servs.*, 172 F.3d 1176, 1182 (9th Cir. 1999) (noting that the language of § 12112(d)(4)(A) "places the burden on the covered entity . . . to make the requisite showing"); *Miller v. Whirlpool Corp.*, 807 F. Supp. 2d 684, 687 (N.D. Ohio 2011) ("The employer has the burden of showing job-relatedness and business necessity.") (citing *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 97–98 (2d Cir. 2003)).

The evidence in this case shows that Binns's requirement that Kroll obtain psychological counseling was both job-related and consistent with WLAA's business necessity. The concerns

---

[1] The prohibition against improper medical inquiries extends to both disabled and nondisabled employees. *Lee v. City of Columbus*, 636 F.3d 245, 252 (6th Cir. 2011).

7

WLAA employees expressed to Dresen and Binns about Kroll's emotional health and its impact on Kroll's work performance provided a significant basis for Binns to question whether Kroll was capable of performing the essential functions of her job as an EMT. "A job function is essential if its removal would 'fundamentally alter' the position." *Kiphart v. Saturn Corp.*, 251 F.3d 573, 584 (6th Cir. 2001) (quoting 29 C.F.R. § 1630.2(n)). Driving the ambulance and assisting paramedics with administering medical care to patients were the two most essential functions of Kroll's EMT position. While it may be arguable that incidents that occurred outside of the workplace reflecting on Kroll's emotional instability had no bearing on whether Kroll was capable of performing her essential job functions, Binns had ample evidence that Kroll's emotional issues were compromising her ability to perform her job duties in a competent and safe manner. Binns was rightly concerned about reports that Kroll was on her cell phone crying and arguing with Easton while driving a patient to the hospital, not simply because her conduct violated WLAA policy, but because it was unsafe and reflected a lack of good judgment and concern for the safety of the patients, Kroll's coworkers, other drivers, and Kroll herself. Similarly, because texting while driving is dangerous under any condition, Binns could have reasonably concluded that Kroll's emotional issues prompted her texting while driving and, thus, impaired her judgment and caused her to ignore the safety and well-being of others.[2] Binns thus had all the more reason to question whether Kroll's mental health was impairing her job performance when Osborn reported that Kroll had ignored her request to administer oxygen to a patient—possibly placing the patient's health or life at risk. Under these circumstances, no reasonable employer would have thought twice about requiring Kroll to obtain counseling as a condition of retaining her job. *See Sullivan*, 197 F.3d at 812 (noting that an

---

[2] Although WLAA has not conclusively shown that Easton was the recipient of Kroll's, Mark Terpstra testified that he assumed Kroll was texting Easton. (Terpstra Dep. at 41.)

employer is justified in ordering a mental health examination "when aberrant behavior . . . affects an employee's job performance").

The same evidence also justified psychological counseling on the basis that Kroll posed a direct threat to herself and others. *See Denman*, 266 F. App'x at 379. A "'direct threat' means a significant risk to the . . . safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). Whether an individual poses a "direct threat" depends on "an individualized assessment of the individual's present ability to safely perform the essential functions of the job." 29 C.F.R. § 1630.2(r). Factors bearing on this inquiry include: "(1) The duration of the risk; (2) The nature and severity of the potential harm; (3) The likelihood that the potential harm will occur; and (4) The imminence of the potential harm." *Id.* Application of these factors to the circumstances of this case tends to show that, given her emotional state, Kroll posed a direct threat. First, while there is no basis to assess the duration of Kroll's emotional condition, the evidence shows that it was not temporary. Testimony from WLAA employees shows that Kroll was going through a difficult relationship with Easton and it is reasonable to conclude that her emotional problems—and their impact on Kroll's workplace performance—would not have resolved without some form of psychological counseling, especially because Kroll and Easton would have continued working together had Kroll not resigned. Second, the nature and severity of the potential harm are patent from Kroll's reckless behavior that placed the safety of her coworkers and patients at risk of serious injury or even death. As for the third and fourth factors, although the likelihood and imminence of the potential harm is difficult to assess, the evidence shows that Kroll engaged in unsafe practices on several occasions by arguing on her cell phone and texting while transporting others, even after at least one coworker expressed concern to Kroll about her use of a cell phone while driving the ambulance. (Osborn Sodini Dep. at 29.)

Kroll argues that WLAA is not entitled to summary judgment because she denies that she engaged in certain behavior and because WLAA relied on rumors and unreliable information. However, the evidence shows that Binns relied on first-hand employee accounts of Kroll's behavior reflecting her mental condition. This evidence consistently showed that Kroll's emotional state was fragile, as she was prone to crying spells, had emotional outbursts at work, and engaged in conduct that jeopardized the safety of others. Moreover, nothing in the records indicates that Binns had any reason to question the veracity of the information provided by WLAA employees.

Kroll also contends that disputed facts remain for the jury because WLAA could have taken other actions, such as disciplining her for the alleged violations of safety rules or allowing her to take time off work or to participate in a voluntary employee assistance program. However, none of these options would have ensured that Kroll's mental health issues were addressed. In addition, contrary to Kroll's assertion, there is no basis to conclude that WLAA's psychological counseling requirement was broader or more intrusive than necessary to address whether Kroll's emotional health issues impaired her ability to perform the essential functions of her EMT position in a safe manner. *See Conroy*, 333 F.3d at 97–98 (noting that business necessity "may include ensuring that the workplace is safe").

Finally, the cases Kroll cites are factually distinguishable from the instant case. For example, in *Gonzales v. Sandoval County*, 2 F. Supp. 2d 1442 (D.N.M. 1998), the court concluded there was sufficient evidence to support the jury's verdict for the plaintiff because the plaintiff had worked forty hours per week plus overtime, never took sick leave and never asked for any accommodations. *See id.* at 1145. Thus, the court concluded that a reasonable jury could have found that the employer's post-employment disability-related inquiry was unnecessary because the plaintiff was having no difficulty performing the essential functions of his position. *Id.* at 1445. In

contrast, the evidence in this case shows that WLAA had good reason to question whether Kroll could perform her essential job functions because she ignored Osborn's request to administer oxygen to a patient and engaged in unsafe conduct. *See Coffman v. Indianapolis Fire Dep't*, 619 F. Supp. 2d 582, 594 (S.D. Ind. 2008), *aff'd* 578 F.3d 559 (7th Cir. 2009) ("Plaintiff's position as an employee with the [Indianapolis Fire Department] certainly presents safety concerns, not only for the employees of the IFD, but also for the public at large."). Kroll's reliance on *Miller v. Whirlpool Corp.*, 807 F. Supp. 2d 684 (N.D. Ohio 2011), is similarly misplace because the issue in *Miller* was whether all of the 34 questions on the employer's medical questionnaire that was part of the certification process for use of powered industrial vehicles "were a reasonably effective and necessary method of achieving workplace safety." *Id.* at 687. There is no such issue in this case, and the Court has concluded that requiring Kroll to attend psychological counseling was a reasonable response to Binns's concerns about Kroll's performance issues. Finally, *Sanders v. Illinois Department of Central Management Services*, No. 09-3207, 2012 WL 549325 (C.D. Ill. Feb. 21, 2012), provides no support for denial of summary judgment to WLAA. The *Sanders* court observed that "'inquiries into an employee's psychiatric health may be permissible when they reflect concern for the safety of employees and the "public at large."'" *Id.* at \*12 (quoting *Coffman v. Indianapolis fire Dep't*, 578 F.3d 559 (7th Cir. 2009)). However, the court denied the defendant summary judgment because an investigation by an independent state agency concluded that the factual basis for the defendant's order requiring the plaintiff to submit to an independent psychological examination was unfounded, yet, the defendant continued to require the plaintiff to undergo the examination. *See id.* The court found that this evidence created an issue of fact as to whether a reasonable employer would have required the plaintiff to undergo a psychological examination and as to whether the examination was job-related and consistent with business

necessity. *See id.* Unlike *Sanders*, there is no evidence in the instant case that Binns had any reason to believe that the first-hand reports he and Dresen received from WLAA employees were unfounded or inaccurate.

## V. CONCLUSION

For the foregoing reasons, the Court will grant WLAA's Renewed Motion for Summary Judgment.

An Order consistent with this Opinion will be entered.


Dated: May 22, 2013  /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE